**Billie Ann Lawrence BRUNELLE,
Appellant**

v.

**TXVT LIMITED PARTNERSHIP d/b/a
Trophy Nissan a/k/a TXVT Limited
Partnership d/b/a TXVT Trophy Nissan a/k/a Trophy Nissan Used Autos
a/k/a Trophy Nissan Used Cars a/k/a
Trophy Used Cars, and TXVT Development, Inc., Appellees.**

No. 05–05–00722–CV.

Court of Appeals of Texas,
Dallas.

Aug. 8, 2006.

Anjel Kerrigan Avant, Kondos & Kondos Law Office, Richardson, for Appellant.

Paul Bezney, Anderson, Jones, Bezney PC, Dallas, for Appellee.

Before Justices WRIGHT, O'NEILL, and FRANCIS.

## OPINION

Opinion by Justice FRANCIS.

Billie Ann Lawrence Brunelle appeals the take-nothing judgment in her negligence suit against TXVT Limited Partnership and TXVT Development, Inc. In two issues, appellant contends the trial court erred in allowing Vince Ferrara to testify and, consequently, probably rendered an improper judgment. We affirm.

Appellant's trial evidence sought to show that she slipped and fell onto her left side on a wet restroom floor in appellees' automobile dealership—Trophy Nissan. As a result of falling on her left side, she allegedly suffered personal injuries, including reinjuring the site where she had undergone surgery for a brain aneurysm. Ap-

pellees did not contest that appellant fell on their premises and, with some conflicts over the details, that the floor in the restroom and adjacent hallway was wet. Appellees called two former employees, Lewis Canterbury and Ferrara, to contradict appellant's evidence of the amount of water on the floor, the warnings she received, why and where she fell, and the extent of her alleged injuries.

Appellant attempted to exclude Ferrara's testimony. When he was permitted to testify, Ferrera recounted that he had discovered appellant lying on her right side in the hallway where he assumed she fell. Her clothing was wet on the right side. She told him that she was taking medication that made her dizzy both before and after she fell. She told him about her brain surgery. She told him that her hip and right elbow were hurting, but she did not mention injuring her head. After the fall, appellant remained at the dealership for several hours while her fiancee (and now husband), Paul Brunelle, purchased a car for his daughter.

Ferrara testified that he left Trophy Nissan in April, 2001 and was presently general manager of a Toyota dealership. He recalled that Wayne Lewis, controller of Trophy Nissan, had called him to ask about appellant's accident, but the conversation focused on Lewis verifying that appellant had fallen, but affirmed that she was okay. Ferrara indicated that he would not have submitted to lengthy questioning from Lewis because he was busy. The jury returned a verdict finding neither side negligent.

In her first issue, appellant contends the trial court should have excluded Ferrara's testimony because appellees did not identify him as a witness and failed to show either good cause for not identifying him or lack of unfair surprise or prejudice, thus resulting in trial by ambush. Appellees respond that appellant was neither unfairly surprised nor prejudiced by allowing him to testify.

■ A party may not call to testify a witness whom it should have identified during discovery unless it can establish either good cause for failing to identify the witness or that the opposing party was not unfairly surprised or prejudiced by the omission. *See* TEX.R. CIV. P. 193.6(a). The proponent of the testimony bears the burden to establish good cause or lack of unfair surprise or prejudice. *See* TEX.R. CIV. P. 193.6(b). The trial court has discretion to determine whether the proponent has met its burden. *Dolenz v. The State Bar of Texas,* 72 S.W.3d 385, 387 (Tex. App.-Dallas 2001, no pet.). The trial court abuses its discretion if it acts in a manner that is arbitrary or capricious or without reference to any guiding rules or principles. *Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 241–42 (Tex.1985). We will uphold the trial court's determination if the ruling has any legitimate basis. *Sierad v. Barnett,* 164 S.W.3d 471, 481 (Tex.App.-Dallas 2005, no pet.).

■ On June 10, 2002, appellees responded to appellant's interrogatories and requests for disclosure. Among its responses, appellees explained how appellant's injury occurred:

> On April 15, 2000, Plaintiff entered into the restroom of Trophy Nissan . . . after observing that the floor was wet, having just been mopped. Plaintiff asked the employee mopping the floor, Lewis Canterbury, if she could use the restroom. Mr. Canterbury stated that the floor was wet, but clean. The lights in the restroom were in good and working order providing sufficient illumination. After having entered the restroom, Plaintiff used the facilities. As she began to leave the restroom, she fell.

The response directed appellant to an attached April 18, 2000 memorandum for further information. The April 18, 2000 memorandum is an unsigned statement from appellant to Lewis, relaying her version of the incident. In her statement, appellant stated that she saw an employee mopping the hall in front of the restroom and the restroom floor was also wet. Appellant stated she fell and landed on her left hip, elbow, wrist, and head. Appellant then related, "I left the restroom dazed and told Paul what had happened. He immediately told Derico, who then relayed the incident to Vincent L. Ferrara. Mr. Ferrara instructed me to go to Baylor Garland Hospital. . . ."

When asked about appellant's location and position after she fell and to identify the first witness or employee to observe her after she fell, appellees responded that her position was unknown, and that "upon information and belief," Paul Brunelle first observed her and Derico Griffin was the first Trophy Nissan employee to see her. The response again refers appellant to the April 18, 2000 memorandum.

In responding to an interrogatory requesting information about the condition of the floor "where the incident occurred" and all conversations appellant had with witnesses or employees, appellees stated that the floor was wet, but clean, and they again directed appellant to the April 18, 2000 memorandum and to a statement from Lewis attached to the interrogatory responses.

Lewis's signed and notarized statement narrates the information Ferrara gave him. The statement reads in its entirety:

On or about April 15, 2000, I was informed that a customer had slipped and fallen near the ladies restroom in the used car building at Trophy Nissan. At this time I was the used car manager for Trophy Nissan.

The person who had fallen was identified to me as a Ms Billie Brunelle. I went up to Ms Brunelle and asked her if she were ok. She replied to that she was okay and did not need any medical attention. I asked her if she was sure she was okay and she again said yes. She looked fine and I could see no visible signs of cuts or bruises or ill effects.

Ms. Brunelle later left after no further complaints

Vince Ferrara as told to Wayne Lewis, Controller, Trophy Nissan

In responding to an interrogatory to identify their trial witnesses, appellees responded that they "currently expect to call Wayne Lewis, Lewis Canterbury, Plaintiff, Paul J. Brunelle, and Derico Griffin." In responding to a request for disclosure regarding "[p]ersons with knowledge and connection to case" appellees identified the persons in the interrogatory response and added Bill Adkins and Jim Whitesell, the former and current general managers of Trophy Nissan. Ferrara was not identified as a witness or person with knowledge.

On August 24, 2004, appellees filed and served upon appellant their trial witness list which included Ferrara's name. The subject of Ferrara's testimony was described as "[m]anager of Pre–Owned Car Sales of Trophy Nissan, Defendant at time of incident, has knowledge of Plaintiff's claims and operating procedures of Defendants."

The trial began on February 7, 2005. During opening statement, appellee's counsel described Ferrara's anticipated testimony. On the following day, during a lunch break, appellant objected to Ferrara's prospective testimony, alleging appellees had not identified him as a witness. The trial court did not rule upon appellant's objection, but did state that appel-

lees could not call Ferrara to testify if they had not identified him as a witness.

On February 9, 2005, before Ferrara testified, appellant renewed her objection to his testimony. Appellant contended that appellees failed to disclose Ferrara as a witness at all in response to her interrogatory and failed to identify him completely in the request for disclosure and a supplemental response. Appellant complained that when appellees did disclose Ferrara on their trial witness list, they listed him only as having knowledge of "plaintiff claims and operating procedures" while, in contrast, they described Canterbury as having knowledge of the incident itself. Moreover, appellant contended that in an interrogatory response and in his deposition, Lewis had stated that Ferrara did not witness the incident. Because Ferrara was not identified as a witness by Lewis or in the request for disclosure, and was only identified in a limited way on the witness list, appellant contended she had "no understanding or belief that Mr. Ferrara had any knowledge that would be worth being deposed with regard to the actual fall itself, other than knowing that it happened in talking to my client afterwards to direct her to the hospital." Finally, appellant complained that appellees had not provided her with Ferrara's contact information other than an address for the Toyota dealership where he now worked.

Appellees responded that they had identified Ferrara as a person with knowledge each time they disclosed information to appellant. Appellant had Ferrara's business card and testified that she spoke with him so she always knew he had knowledge of the incident. Appellees argued that appellant could not have been surprised because Ferrara was included on their trial witness list filed six months before trial. Appellant received the Lewis statement, disclosing Ferrara saying she fell outside the bathroom and she was not hurt, two-and-one-half years before trial in response to her request for disclosure. Appellees concluded that if, "he's not allowed to testify, it will affect the outcome of this case because it is critical to liability." The trial court overruled appellant's objection and permitted Ferrara to testify.

On appeal, appellant contends appellees masked Ferrara's identity as a witness by concealing the subject and scope of his testimony and providing false discovery responses at odds with his testimony. Appellant contends she was surprised because she did not learn the import of Ferrara's testimony until appellees' opening statement. Appellant contends appellees offered no evidence or explanation that would constitute good cause for failing to disclose Ferrara's identity and the scope of his testimony.

We agree with appellant that appellees' discovery responses did not reveal the scope of Ferrara's knowledge of the incident. We cannot agree, however, that the trial court abused its discretion in allowing Ferrara to testify.

The trial court informed the parties that if Ferrara was not identified in discovery, he would not testify. By overruling appellant's objection and permitting Ferrara to testify, the trial court determined implicitly either that appellees disclosed Ferrara's identity, there was good cause for not disclosing him, or that appellant was not unfairly surprised or prejudiced. *See* Tex.R. Civ. P. 193.6(a); *Bellino v. Comm'n for Lawyer Discipline*, 124 S.W.3d 380, 384 (Tex.App.-Dallas 2003, pet. denied).

Although Ferrera was not expressly identified as a witness in appellees' discovery responses, appellees did refer appellant to, and provide copies of, the memorandum and statement that identified Ferrara as a person with knowledge of the events at issue. Appellees also

placed Ferrara's name on their witness list more than six months before trial. Appellant already knew Ferrara was a potential witness because she had spoken with him on the day of her fall. Because Ferrara no longer worked for Trophy Nissan, both sides had roughly equal access to him to discover the import of his testimony. Therefore, the record supports a determination that appellant knew enough about Ferrara to not be *unfairly* surprised. Because there is a legitimate ground for the trial court's determination, and because there is no showing that it acted capriciously, arbitrarily, or without reference to any guiding rules and principles, the trial court did not abuse its discretion in permitting Ferrara to testify. *See* Tex.R. Civ. P. 193.6(a); *Downer,* 701 S.W.2d at 241–43; *Sierad,* 164 S.W.3d at 481–83; *Dolenz,* 72 S.W.3d at 387. *See also* Tex.R. Civ. P. 194.2(c) (permitting discovery of factual basis of responding party's claims or defenses but not requiring responding party to marshal all of its trial evidence). We overrule appellant's first issue.

In her second issue, appellant contends the error in admitting Ferrara's testimony probably caused the rendition of an improper judgment because his testimony disputed material allegations in the case and was not cumulative of other evidence. Because we have concluded that the trial court did not err in admitting Ferrara's testimony, we overrule appellant's second issue.

We affirm the trial court's judgment.